UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA O'BRIEN and
RICHARD O'BRIEN,

    Plaintiffs,

v.

CITY OF MASON and MARK
RECKLING, sued in his individual
capacity,

    Defendants.
_____/

Case No. 1:16-CV-391

HON. GORDON J. QUIST

# OPINION

This case arises out of the arrest of Plaintiff Marcia O'Brien. Plaintiff Richard O'Brien is Marcia's husband. Plaintiffs allege that the arresting officer, Defendant Mark Reckling, violated their First and Fourth Amendment rights and that the City of Mason is liable for failure to properly train Reckling and other officers. Defendants moved for summary judgment and asserted the defense of qualified immunity. Oral argument was heard on June 20, 2017. For the following reasons, the Court will grant Defendants' motion.

## FACTS

On August 29, 2015, at approximately 11:17 p.m., City of Mason Police Officers Mark Reckling and Alex Thompson responded to a call regarding trespassing at the Quality Dairy in Mason, Michigan. A music festival was either ongoing or had recently ended. Officer Joe Fairbotham was already in the parking lot of the Quality Dairy and had made contact with Jaime McKnight, an African American male, and several other individuals. Thompson parked his

vehicle about 25 feet away from Fairbotham and McKnight and went to assist Fairbotham in handling the group. Reckling stayed with the vehicle.

The Plaintiffs walked by the Thompson-Fairbotham-McKnight group shortly after Thompson and Reckling arrived. As they walked by, Richard said, "I see you have got the only African American person in town tonight." (ECF No. 30-8 at PageID.450.) The couple continued walking and stopped at the corner of Maple and Parks street. Marcia then turned around and started walking back towards the crowd. (ECF No. 30-2 at PageID.345.) Richard stayed at the corner of Park and Maple. (*Id*.) Marcia stopped near Thompson's police cruiser (roughly 20 feet from the crowd), and Reckling approached her almost immediately. (*Id*.) Reckling told Marcia to leave. After she refused to leave, Reckling told Richard that Marcia and Richard should go home. (*Id*.) Reckling took Marcia by the arm in the "escort position" and turned her around to get her to walk away. (ECF No. 30-4 at PageID.388.) Marcia spun free, telling Reckling that "he can't grab her like that." (ECF No. 30-2 at PageID.345.)

After another verbal exchange, Reckling handcuffed and put Marcia into the back of the police vehicle. Reckling wrote Marcia a citation for resisting and obstructing a city official:

> Sec. 42-2. Resistance and obstruction of city officials prohibited.
> (a) No person shall willfully obstruct, resist or oppose the performance of duties by someone the person knows or reasonably should have known to be a city police or any other authorized official of the city.
> (b) As used in this section, "obstruct" includes the use or threatened use of physical interference or force or knowing failure to comply with a lawful command

(Mason Ord., Part 2, Ch. 22, Art. II, Sec. 22-34.) It is undisputed that Richard stayed a distance away from Marcia's confrontation with Reckling.

The officers' accounts of the interaction differ from Marcia and Richard's only in characterizing Marcia as having been "loud and boisterous" when she was speaking with Reckling. During discovery, Marcia made a F.R.Civ.P. 36 admission that she had been loud and boisterous.

2

(ECF No. 23-11 at PageID.196.) Marcia testified in her deposition that she was not yelling at Reckling and that she did not make a commotion at the crime scene. (ECF No. 30-2 at PageID.346.) However, Marcia's Rule 36 admission controls: "A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). "Further, such conclusive admissions 'cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record.'" *Goodson v. Brennan*, No. 16-5023, 2017 WL 1857270, at *3 (6th Cir. May 8, 2017) (quoting *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x. 233, 244 (5th Cir. 2014)).

Marcia later admitted responsibility for a civil infraction of noise violation and paid a $130 fine. The cited ordinance is § 22.34, which provides:

> The following acts, among others, are declared to be loud, disturbing, injurious, and unnecessary noises in violation of this article; but this enumeration shall not be deemed to be exclusive:
> .
> (3) Yelling, shouting, etc. Yelling, shouting, hooting, whistling or singing on the public streets, particularly between the hours of 10:00 p.m. and 7:00 a.m. or at any time or place so as to annoy or disturb the quiet, comfort or repose of persons in any office, or in any dwelling, hotel or other type of residence, or of any persons in the vicinity.

(Mason Ord., Part 2, Ch. 22, Art. II, Sec. 22-34.)

## CLAIMS AGAINST THE CITY

In Counts I and III, Plaintiffs allege that the City of Mason is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), because the City "has failed to train its officers in the proper procedure when citizens wish to observe the police officer in the performance of their duties." (ECF No. 30 at PageID.325.)

"The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police

3

come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989)). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

**Qualified Immunity**

Plaintiffs rely on a single instance in which the Michigan Court of Appeals found that Reckling detained a person without reasonable suspicion in violation of the Fourth Amendment. *See People v. Reynolds*, No. 310781, 2012 WL 6097341 (Mich. Ct. App. Dec. 6, 2012). But the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program*." City of Canton v. Harris*, 489 U.S. 378, 390–91, 109 S. Ct. 1197, 1206 (1989) (citing *City of Springfield v. Kibbe*, 480 U.S. 257, 268, 107 S. Ct. 1114, 1120 (1987)). Furthermore, the arrest at issue in *Reynolds* did not implicate any First Amendment defense; Reckling suspected the arrestee to have been responsible for graffiti. *Reynolds*, 2012 WL 6097341, at *2. Thus, Plaintiffs fail to create a genuine issue of material fact on *Monell* liability.

**CLAIMS AGAINST RECKLING**

Counts I and IV allege that Plaintiffs were retaliated against for the exercise of First Amendment rights. (ECF No. 1 at PageID.7, 9.) First Amendment retaliation claims have three elements:

(1) the plaintiff engaged in protected conduct;
(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
(3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir.2011) (footnote omitted) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

Count II alleges malicious prosecution and Count III alleges false arrest and false imprisonment, all in violation of the Fourth Amendment. To succeed on a malicious prosecution claim, a plaintiff must prove:

(1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute;
(2) there was a lack of probable cause for the criminal prosecution;
(3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and
(4) the criminal proceeding was resolved in the plaintiff's favor.

*Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)). Similarly, "[a] plaintiff bringing a constitutional claim for false arrest under the Fourth Amendment bears the burden to prove 'that the arresting officer lacked probable cause to arrest the plaintiff.'" *Sinclair v. Lauderdale Cnty.*, 652 F. App'x 429, 433 (6th Cir. 2016) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).

Defendants argue that they are entitled to qualified immunity. A plaintiff's claim survives the defense of qualified immunity at summary judgment if (1) "the facts alleged make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). The Court can address these issues in any order. *Id*.

When conducting the first part of the qualified immunity analysis, "the Court considers only the facts that were knowable to the defendant officers." *White v. Pauly*, ____ U.S. ___, 137 S. Ct. 548, 550 (2017) (citing *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466, 2474 (2015)). Because this is a motion for summary judgment, those facts are viewed in the light most favorable to Plaintiffs. *Id*.

"[F]or a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)). "'[C]learly established law' may not be defined at [] 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights,* No. 16-3317, 2017 WL 2432389, at *3 (6th Cir. Feb. 24, 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084 (2011)). "The Supreme Court recently reminded us that a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552).

### Fourth Amendment Claims

Defendants argue that Reckling had probable cause to arrest and prosecute Marcia. In Michigan, a police officer may make a warrantless arrest where "[a] felony, misdemeanor, or ordinance violation is committed ... in the officer's presence." M.C.L. § 764.15(a). "For probable cause to arrest to exist, the 'facts and circumstances within the officer's knowledge' must be 'sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing or is about to commit an offense.'" *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 362 (6th Cir. 2013) (quoting *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003)). "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Kennedy*, 635 F.3d at 215. The Sixth Circuit has, at times,

6

held that "[d]etermining whether probable cause existed, 'presents a jury question, unless there is only one reasonable determination possible.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)). At other times, the Sixth Circuit treats probable cause as a question of law. *See McKenna v. Edgell*, 617 F.3d 432, 441 (6th Cir. 2010) (collecting inconsistent cases).

Marcia's guilty plea to the noise violation bars the Fourth Amendment claim. "In Michigan, it is 'well established that a conviction, unless procured by fraud or unfair means, is conclusive evidence of probable cause.'" *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 378 (6th Cir. 2006) (quoting *Blase v. Appicelli*, 195 Mich. App. 174, 178, 489 N.W.2d 129, 131 (1992)). Moreover, the parties stipulated that Marcia was "loud and boisterous" when interacting with Reckling while the other officers were interacting with others who were only six to seven steps away. (ECF No. 23-11 at PageID.196.) Marcia also refused to leave the scene when asked to do so. This amounts to probable cause to arrest Marcia for obstruction and for the noise violation ordinance, which prohibits "[y]elling, shouting, hooting, whistling or singing on the public streets, particularly between the hours of 10:00 p.m. and 7:00 a.m.. or at any time or place so as to annoy or disturb the quiet, comfort or repose of … any persons in the vicinity."

### First Amendment Claims[1]

*Marcia's Claim*

Marcia's First Amendment claim fails because she has not cited a case clearly establishing a First Amendment right to observe the police. A number of circuits have addressed the existence of a First Amendment right to observe and record the police activity, and some have found that

---

[1] At oral argument, Plaintiff's counsel relied on *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008) for a number of propositions. That case was not cited in Plaintiff's briefs, and, in any event, does not support their arguments. The court in *King* found the disruptive behavior at issue to be unprotected by the First Amendment, and that the defendant officers were entitled to qualified immunity.

7

right to be clearly-established. *See, e.g., Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). But the Sixth Circuit has yet to join those courts, and the only district courts in the Sixth Circuit to address that issue have found otherwise. *See Williams v. City of Paris*, No. 5: 15-108-DCR, 2016 WL 2354230, at *4 (E.D. Ky. May 4, 2016); *Crawford v. Geiger*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015), *aff'd in part, rev'd in part and remanded,* 656 F. App'x 190 (6th Cir. 2016); *see also Fields v. City of Philadelphia*, 166 F. Supp. 3d 528 (E.D. Pa. 2016).

*Richard's Claim*

Count IV alleges, "Defendant Reckling arrested and confined Mrs. O'Brien in retaliation of her husband's comment and not for any lawful reason." (ECF No. 1 at PageID.10.) Defendants moved for summary judgment because Richard provides no evidence that any Defendant actually took an adverse action against him. (ECF No. 23 at PageID.102-03.) Richard relies on *Thompson v. North American Stainless, LP*, 562 U.S. 170, 131 S. Ct. 863 (2011). There, the Supreme Court thought "it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired" in retaliation for that activity. *Id.* at 174, 131 S. Ct. at 868. This case is not relevant because the Defendants' confrontation with Marcia was not an ongoing matter that would affect Richard in the slightest.

Assuming for the sake of argument that *Thompson's* logic applies in the § 1983 context, Reckling is still entitled to qualified immunity. "If a defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Garcia v. Thorne*, 520 F. App'x 304, 310 (6th Cir. 2013) (citing *Thaddeus–X,* 175 F.3d at 399. Here, Reckling had probable cause to arrest Marcia, and arrested her only after she

8

approached the group a second time and engaged in loud and boisterous conduct while the police officers, going about their duties, were engaged with Mr. McKnight.

## CONCLUSION

For the foregoing reason, the Court will grant Defendants' motion for summary judgment in its entirety.

An order consistent with this Opinion will enter.


Dated: June 29, 2017 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE